NANCY COLLAR

*v.*

GREEN C. PATTERSON, Admr.

*Filed at Mt. Vernon May 9, 1891.*

1. WAGES FOR SERVICES—*as a member of family—when recoverable.* The plaintiff, after her father's death and her mother's second marriage, in 1846, became an inmate of the family of the husband of her aunt, where she performed household duties until her marriage, in 1861. After the death of her aunt's husband the claimant filed a claim against his estate for services rendered: *Held*, that the circumstances under which she went to live with the deceased, her relationship to his wife, and the fact that she continued to live in his family for so many years without any payment or settlement, raised a presumption that she lived as a member of the family of deceased, and that she could recover only by showing an express contract for wages, or proving such circumstances as would reasonably imply such a contract.

2. Where a claimant against an estate performed household services for the deceased, who was the husband of the claimant's aunt, and such services continued for many years, without any payments or settlements, it was *held*, that although she may have expected to become an object of bounty by the will of the deceased, that fact would not entitle her to recover against the estate as upon a contract, express or implied, for wages.

3. STATUTE OF LIMITATIONS—*how claim revived—promise to strangers.* Where a claim against an estate for services performed shows, on its face, that it has been for several years barred by the Statute of Limitations, prior to its being filed, no recovery can be had without proof

of such an acknowledgment of the debt, or some promise to pay it by the deceased within five years prior to the filing of the claim, as will revive the debt. And the promise or statements to revive the debt must be made to the claimant, and not to mere strangers.

4. PRACTICE—*directing what the verdict shall be.* An instruction to the jury to find for the defendant, after he has introduced his evidence, is allowable only when, as a matter of law, admitting all the facts which the evidence of the plaintiff proves or tends to prove, and ignoring all of that introduced by the defendant, the court can say the plaintiff has failed to make out his case.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of St. Clair county; the Hon. B. H. CANBY, Judge, presiding.

Messrs. DILL & SCHAEFER, and Mr. E. L. THOMAS, for the plaintiff in error:

The court erred in instructing the jury to find for the defendant. When there is evidence tending to establish the plaintiff's right to recover, it is an invasion of the province of the jury to instruct them to find for the defendant. (*Guerdon* v. *Corbett,* 87 Ill. 272.) It is in the nature of a demurrer to the evidence. *Pennsylvania Co.* v. *Conlan,* 101 Ill. 95; *Crowe* v. *People,* 92 id. 231.

As to the right to compensation for services rendered the deceased, see *Pratt* v. *Stone,* 10 Bradw. 633; *Miller* v. *Miller,* 16 Ill. 296; *Faloon's case,* 118 id. 298; *Schwarz* v. *Schwarz,* 26 id. 81; *Warren* v. *Warren,* 105 id. 568; 3 Wait's Actions and Defenses, 584, 585.

Mr. J. M. HAMILL, for the defendant in error:

When a child remains with the parent, or person standing in the relation of parent, after arriving of age, and remains in the same apparent relation, the presumption is that the parties do not contemplate payment of wages for services. *Miller* v. *Miller,* 16 Ill. 296; *Brush* v. *Blanchard,* 18 id. 46; *Myers* v. *Malcom,* 20 id. 621; *Bond* v. *Lockwood,* 33 id. 212; *Malony* v. *Scanlan,* 53 id. 122; *Mowbry* v. *Mowbry,* 64 id. 383; *Meyer.*

v. *Temme*, 72 id. 574; *Faloon* v. *McIntyre*, 118 id. 292; *Arnold* v. *Franklin*, 3 Bradw. 421; *Cooper* v. *Cooper*, id. 492.

The law will not, in the absence of special circumstances, imply either an intention to charge or a promise to pay for board or services among members of the same family living together as one household, but the presumption will be that the services were a gratuity. To rebut this presumption, ordinarily, either an express contract must be proven, or it must be shown by facts and circumstances that at the time the board was furnished or the services were rendered, payment was both expected and intended. *Cooper* v. *Cooper*, 12 Bradw. 478; *Fruitt* v. *Anderson*, id. 421; *Woolsey* v. *White*, 7 id. 277.

It must have been the purpose of the deceased to assume a legal obligation capable of being enforced against him. The ordinary expressions of gratitude for kindness, and to old age, weakness and suffering, are not to be tortured into contract obligations. *Hall* v. *Finch*, 29 Wis. 278; *Mountain* v. *Fisher*, 22 id. 93; *Swires* v. *Parsons*, 5 W. & S. 357; *Bash* v. *Bash*, 9 Pa. St. 260; *Lynn* v. *Lynn*, 29 id. 369; *Duffy* v. *Duffy*, 44 id. 402; *Lantz* v. *Frey*, 14 id. 201; *Defrance* v. *Austin*, 9 id. 309; *Scully* v. *Scully*, 28 Iowa, 548; *Coe* v. *Wager*, 42 Mich. 49; *St. Jude's Church* v. *Van Denberry*, 31 id. 287; *Williams* v. *Hutchinson*, 3 Conn. 312; *Fitch* v. *Peckham*, 16 Vt. 150; *Weir* v. *Weir's Admr.* 3 B. Mon. 645.

When all the items of an open account are on one side, the last item which happens to be within five years will not draw after it those that are of longer standing, so as to protect them from the bar of the statute. *Thompson* v. *Reed*, 48 Ill. 119; *Reeves* v. *Herr*, 59 id. 81.

As to the promise or recognition of debt that will revive the debt after once barred, see *Parsons* v. *Coal and Iron Co.* 38 Ill. 433; *Carroll* v. *Forsyth*, 69 id. 127; *Ayers* v. *Richards*, 12 id. 146; *Norton* v. *Colby*, 52 id. 198.

The promise to pay must be made to the party benefited, or some one authorized to act in his behalf. *Wachter* v. *Albee*,

80 Ill. 47; *Keener* v. *Crull,* 19 id. 189; *Carroll* v. *Forsyth,* 69 id. 127; *McGrew* v. *Forsyth,* 80 id. 596; *Leeson* v. *Camblin,* 1 Bradw. 424; *Dawdy* v. *Nelson,* 12 id. 74; *Katez* v. *Monsinger,* 7 id. 536.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

On the 30th of April, 1887, the plaintiff in error filed her amended claim against the estate of William McClintock, deceased, in the county court of St. Clair county, as follows: "For sixteen years' work, at $312.50 per year, from 1846 to 1862, $5000. For the sum acknowledged to be due to said Nancy Collar for said work and services, by William McClintock, in his lifetime, in a certain will executed by him, $5000." On a trial in that court she recovered judgment for $2250. On appeal to the circuit court that judgment was increased to $5000, but the Appellate Court for the Fourth District, at its August term, 1888, reversed the judgment of the circuit court, on the ground, mainly, that it was not supported by the evidence, and remanded the cause. On a second trial, after both parties had introduced their evidence, the court, at the instance of the administrator, instructed the jury to find for the defendant and enter judgment against claimant for costs. Said Appellate Court having affirmed this last judgment, this writ of error is prosecuted, and two grounds of reversal are now urged, viz.: The circuit court erred in instructing the jury to find for the defendant, and in admitting the evidence of Horace Eyman and Green C. Patterson on behalf of defendants below, the former being an heir and the latter the husband of an heir of said William McClintock. The decision of the first of these points will dispose of both.

The practice of instructing a jury to find for the defendant, after he has introduced his evidence, though not usual, has been recognized by this court, as well as others. (*Bartelott* v. *International Bank,* 119 Ill. 269, and cases cited on page 270.)

An instruction to that effect can, however, only be sustained when, as a matter of law, admitting all facts which the evidence of the plaintiff proves or tends to prove, and wholly ignoring all of that introduced by the defendant, the court can say the plaintiff has failed to make out his case. If, therefore, this judgment can be sustained at all, it must be done without reference to the evidence of Eyman and Patterson, or any other testimony introduced by the defendant below, and even though such evidence was improperly admitted, no injury could have thereby resulted to claimant. We need then address ourselves only to the question, does the testimony appearing in this record on behalf of claimant establish, or tend to establish, her claim.

It shows that in the year 1846, her father having previously died and her mother married a second time, she became an inmate of the family of the deceased, and continued to live with him until 1862, when she married. The wife of the deceased was her aunt. During all these years she performed household duties for the deceased, which the evidence shows were of the value of from $2.50 to $2.75 a week. The circumstances under which she went to live with the deceased, her relationship to his wife, and the fact that she continued to live in his family for so many years without any payment or settlement therefor, raises such a presumption that she lived there as a member of his family, that she can only recover by showing an express contract for wages, or proving such circumstances as reasonably imply such a contract. (*Miller* v. *Miller*, 16 Ill. 296; *Byers* v. *Thompson*, 66 id. 421; *Faloon* v. *McIntyre et al.* 118 id. 292.) There is an entire absence of such proof in this case—nothing whatever tending to show that during the time she lived with the deceased either party understood that there was any legal liability on his part to pay her for her services. On the contrary, all the facts and circumstances offered in evidence by her tend to show the absence of such an understanding. Even if it were true that

she performed said services expecting to become one of the objects of his bounty by will, (which it is admitted the evidence fails to show,) that fact would not entitle her to recover as upon a contract, express or implied, for wages. The most that can be said of the declarations of the deceased to the witnesses Kase, Rich, Charles W. Thomas, Holcom and the claimant's daughter, is, that they show that. he appreciated the services of the claimant and her kindness toward him, and intended to manifest that appreciation by making her a gift by his will. If he had understood that he was under a contract liability to pay her wages for such services, or under a legal liability to do so, in the sense that counsel attempt to construe his language, he would certainly have used different terms from those which these witnesses testify to. He does not talk of paying her a debt, but of making her a gift, providing for her, etc.

But a still more insuperable objection to her right to recover, on her own proof, is the entire absence of evidence tending to take her claim out of the bar of the Statute of Limitations. We do not understand, as counsel for appellee argue, that the amended claim is in any sense for a bequest by will. The evident purpose of stating an acknowledgment of the claim by the will was to avoid the Statute of Limitations— at least there is no proof whatever of the legal execution of a will by the deceased. The claim shows upon its face that the Statute of Limitations had run against it many years prior to its being filed. Unless, therefore, there is some proof of such an acknowledgment of the debt, and a promise to pay it by the deceased within five years prior to the filing of the claim, as would in law revive it, there could be no recovery, however clear and positive the proof as to the original liability. If it be conceded that what deceased said to the witnesses in reference to his purpose to make a bequest in favor of the claimant amounted to an acknowledgment of an indebtedness to her and a purpose to pay that indebtedness, (which, as we

have seen, can not properly be done,) still, the authorities are clear to the effect that such statements would not revive a debt barred by the Statute of Limitations, for the reason they were made to strangers, and not to the party claiming such indebtedness. *Wachter* v. *Albee, Admx.* 80 Ill. 47 ; *McGrew et al.* v. *Forsyth,* id. 596 ; *Carroll et al.* v. *Forsyth,* 69 id. 127 ; Wood on Limitations of Actions, 128.

The only evidence of any conversation between the parties themselves as to the services rendered by claimant, is that of the daughter of plaintiff in error, Effie Collar. She says she heard several conversations between her mother and McClintock "as to what he intended to do for her. The last one was about two weeks before his death. He said, 'I wish I could do now as I could a few years ago,' and mother asked why. He said he would make a deed for more land than he had given her, and said she had done more for him than anybody else ever had, but he had made provision for her. He said she would have plenty in her old days. He said she had taken care of him as a child would have done, and he thought if anybody ought to have anything that belonged to him, she ought to have it. He said she had stayed there and done all the work, and nursed him when he was sick. He said he had never given her anything to amount to anything, and he wanted her to be paid for what she had done. I heard him say that a great many times." This evidence not only fails to show an acknowledgment on his part to pay a debt, but clearly shows that the deceased did not understand that any indebtedness existed in claimant's favor against him, in the sense of a legal liability. Whether or not the result reached will work a hardship upon claimant, and whether or not William McClintock, from an equitable standpoint, ought to have provided for her more liberally than he did, are questions with which we have nothing to do.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*